On the 22nd day of December, 1926, Belle Depew Dearborn applied to the county court of Noble county for letters of administration on the estate of William W. Dearborn, deceased. She alleged that she was the widow of deceased, and that the other heirs were two daughters and two sons of deceased.
Plaintiff in error, Lila M. McCreath, one of the daughters of deceased, contested the right of defendant in error to receive such letters of administration on the ground that the petitioner herefor was not the surviving wife of deceased.
The ground of objection is based upon the assertion that a judgment of divorce obtained by William W. Dearborn from the mother of Lila M. McCreath was void, for the reason that the petition in the divorce action was not verified as required by law. The petition in the divorce action, attached to the protest in the cause at bar, reads as follows:
"William Dearborn being duly sworn upon oath says that he is the plaintiff above named. That he has read the foregoing petition, and that the statements therein are true.
"(Signed) William W. Dearborn."
There was no certificate or jurat.
The county court heard the matter, held that Belle Depew Dearborn was the common-law wife of decedent, and issued letters of administration to her. An appeal was had to the district court, where the cause was *Page 59 
tried de novo; the judgment there affirmed the county court's action. Lila M. McCreath has perfected an appeal from the district court, and now contends:
(1) That the divorce purported to have been granted in the district court of Noble county, Okla., on April 17, 1916, was null and void by reason of the fact that the petition filed therein was not verified.
(2) That the purported marriage ceremony performed by Judge Clark in Oklahoma City on October 16, 1916, is null and void by reason of having been performed within the six months prohibitive period after the granting of the alleged divorce.
(3) That a common-law marriage did not exist between William Dearborn and Belle Depew Dearborn because of the meretricious inception of the connubial relation between them, without any apparent change in said relationship after the removal of the disability and consequent lack of good faith on the part of both parties, and
(4) That Belle Depew Dearborn was incompetent to testify in respect to any transaction had personally by her with William Dearborn, under section 588, C. O. S. 1921.
We decide these propositions in their order.
"The verification of the petition in an action for divorce, as provided by section 503, C. O. S. 1921, is not jurisdictional, and the failure to verify is waived if no objection is made and the cause proceeds to trial on the merits." Javine v. Javine, 134 Okla. 283, 273 P. 267.
See, also, Doggett v. Doggett, 85 Okla. 90, 208 P. 223; Ewing v. Ewing, 87 Okla. 72, 209 P. 440.
The records of the divorce action, as exhibits herein, show that the defendant in the divorce action, Marie Dearborn, entered her appearances therein. The rule in the Javine decision, supra, concludes the proposition contrary to plaintiff in error's contention.
We agree with the second proposition as stated.
"A marriage of a divorced person within the prohibited period is invalid in this state if solemnized here, or if solemnized in a sister state to evade the law of this state." Yeats v. State, 30 Okla. Cr. 320, 236 P. 62.
"The relation of marriage is created by a civil contract in which the state has a vital interest, it being the foundation of the family and society; and where a party has been divorced and the statute provides that the decree shall not become absolute for a period of six months, held, any marriage in violation thereof is void; neither of the parties to a divorce having the capacity to legally contract a marriage with any other person during such period. An attempted marriage in violation of this statute is void in the state of domicile or any other place." Atkeson v. Sov. Camp W. O. W., 90 Okla. 154,216 P. 467.
It will be noted that the divorce decree considered was granted April 17, 1916. The purported marriage considered was shown to have been celebrated on October 16, 1916. That ceremony was briefly within the six calendar months' prohibited period. Bertwell v. Haines, 10 Okla. 469, 63 P. 702. However, the invalidity of that marriage ceremony is not decisive of the case at bar, for the evidence discloses that subsequent to the purported marriage ceremony Belle Depew Dearborn occupied a status in the social order as decedent's wife, and continued to occupy such status until the death of William W. Dearborn. The court below held that a common-law marriage was established and did exist between these parties. The contention to the contrary is based upon the theory that there was no change in the original relationship of the parties; that prior to the marriage ceremony, as subsequent, Belle Depew Dearborn was held out to be the wife of decedent; that the purported marriage, the conduct prior and subsequent, was meretricious, and being no change, the meretricious relation would never ripen into a lawful relation.
The evidence before the trial courts and now before us clearly shows that, during a ten-year period following the marriage ceremony and prior to the death of William W. Dearborn, no one challenged the bona fides of the conduct and relationship of decedent and Belle Depew Dearborn, nor did they challenge it themselves, as they had their relationship prior to the marriage ceremony, by their attempted marrage within the prohibited period.
Clark v. Barney, 24 Okla. 455, 103 P. 598, does not apply to this matter. The governing rule is stated in Webster v. Webster, 114 Okla. 57, 242 P. 555:
"When parties in good faith comply with the forms of law which would give rise to their marriage, but for one being under a disability, the law infers that the matrimonial consent was interchanged between them as soon as the disability is removed, and stamps their relation with the status of a valid marriage."
This decides the third proposition. *Page 60 
In the fourth proposition plaintiff in error contends that marriage and subsequent relationship between the parties thereto constitute a "transaction" within the meaning of section 588, C. O. S. 1921, so that a party to such a relationship is not competent to testify in connection therewith over objections, when the other party to the marriage is deceased.
Hopkins v. Bower, 111 N.C. 175, 16 S.E. 1; Worthington v. Diffenbach, 184 Iowa, 577, 168 N.W. 257; Schwingle v. Keefer,105 Tex. 609, 153 S.W. 1132, and Stire's Will, 92 Okla. 276,219 P. 695, are relied upon by plaintiff in error.
Moreover, plaintiff in error urges that, without the alleged incompetent testimony of defendant in error, there is no evidence in the record to support the judgment and necessary basis therefor, which is a common-law marriage between defendant in error and decedent.
Assuming, without deciding, that section 588, supra, would bar the testimony of defendant in error, upon objection, it clearly appears that the incompetency of this testimony was waived by conduct below upon cross-examination, wherein matters were gone into concerning the relation between decedent and defendant in error, covering a long period of time and over a wide range, not limited to that adduced on direct examination.
Such testimony as adduced upon cross-examination, separate and apart from that found in the direct examination of this witness, was sufficient to establish a common-law marital status, as was found by the trial court.
In Secrest v. Nobles, 97 Okla. 277, 223 P. 863, and Conwell v. Eldridge, 71 Okla. 223, 117 P. 79, the rule is stated:
"The incompetency of a witness to testify concerning transactions or communications had with a party since deceased, is waived by the objecting party eliciting on cross-examination testimony relating to such transactions or communications, or by showing on cross-examination that such transactions or communications occurred."
Judgment affirmed.
LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.
Note. — See under (2) 18 R .C. L. 436, 447; R. C. L. Perm. Supp. p. 4450, 4451; R. C. L. Pocket Part, title "Marriage," § 64.